IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JASON DEASE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-394-KFP |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff seeks judicial review of the denial of his claim for disability insurance benefits. Because the decision of the Commissioner of Social Security is not supported by substantial evidence and the Appeals Council erred, the decision is REVERSED and REMANDED.

## I.   STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v.*

---

[1] Kilolo Kijakazi is now the Acting Commission of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.    PROCEEDINGS BELOW

Plaintiff filed his disability insurance benefits application on February 1, 2018, alleging his disability began on July 7, 2016. R. 281-82. Following a hearing, the ALJ denied Plaintiff's application on August 22, 2019. R. 34-49. The Appeals Council then denied his Request for Review of Hearing Decision on April 24, 2020. R. 1. Thus, the hearing decision became the final Commissioner decision, which is ripe for review. *See* 42 U.S.C. § 405(g).

## III.    BACKGROUND

Plaintiff, a former United States Marine, worked as a diesel mechanic during his military service from 1998 through 2002. R. 43, 326. Following his service, he worked as an aircraft technician. R. 304, 326. Plaintiff has primary custody of his two minor children and, with the assistance of his mother, is able to prepare meals, perform household chores, and ensure the children get to and from school. R. 85-86, 319.

Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder, major depressive disorder, insomnia, and anxiety. R. 381-99. For these medical conditions, Plaintiff was medicated and received medication adjustments periodically, including in June 2016 and November 2016 through his treatment at Wiregrass Wellness Center with

Dr. Chris Strunk. R. 381-83; 387-89. In September 2017, nurse practitioners at Dothan Behavioral Medicine Clinic began treating Plaintiff for ADHD, major depressive disorder, insomnia, and agoraphophia with panic disorder. R. 410-16. Again, he received treatment with medication and periodic adjustments to the same. *See* R. 134-39, 146-48, 402-16, 531-32.

Overall, Plaintiff responded well to treatment. Plaintiff's psychiatrist Dr. Strunk, who treated him in 2015, 2016, and 2017, recorded Plaintiff's general copacetic response to treatment, as the prescribed medications worked well for Plaintiff. *See* R. 381-99; *see also* R. 461, 463. The nurse practitioners who treated Plaintiff at Dothan Behavioral Medicine Clinic had consistent diagnoses of, and general treatment stability with, Plaintiff's ADHD, major depressive disorder, and agoraphobia with panic disorder, although he continued to report, among other things, negative sleep patterns, panic attacks, and anxiety. R. 402-416, 531-32.

Some of Plaintiff's medical issues are also documented through the Department of Veterans Affairs. The VA identified, among other things, the following on Plaintiff's "problem list" as of February 1, 2018: anxiety, joint pain, and post-traumatic stress disorder. R. 417-20. The VA gave Plaintiff the following disability determination: post-traumatic stress disorder, 70% disabled; knee injury connected to his military service, 10%. R. 425.[2]

---

[2] There are no other medical records regarding Plaintiff's knee injury or other physical impairments. However, Plaintiff did testify at the hearing regarding the knee injury and lower back pain. R. 87-88.

## IV.    THE ALJ'S FINDINGS

At the hearing before the ALJ, Plaintiff appeared without counsel or a representative. R. 83. Plaintiff testified regarding symptoms of his depression and anxiety, including panic attacks and sleeplessness. R. 86; 88-90; 92; 94-95. A third party, Mavis Pittman, provided supporting information regarding the negative impact of Plaintiff's depression and anxiety, including on his sleep pattern. R. 318-25. The ALJ found Pittman's statements "generally consistent" with Plaintiff's allegations and somewhat persuasive. R. 42; 46.

Plaintiff testified that his last employment as an aircraft technician assembling aircraft parts was terminated due to excessive tardiness or absences. R. 43. Plaintiff stated he has been unable to work since that time due to his major depressive disorder, anxiety disorder, and PTSD. R. 89-92. He testified that he continued to experience panic attacks and sleeplessness. R. 90; 92; 94-95; *see also* R. 42-43.

Based on the medical record, the ALJ determined Plaintiff had the following impairments: major depressive disorder, agoraphobia with panic disorder, post-traumatic stress disorder, anxiety, and attention-deficit hyperactivity disorder. R. 39. The ALJ then crafted Plaintiff's residual functional capacity ("RFC") based upon his assessment of limitations in the mental functional analysis. R. 40-41. In doing so, the ALJ found testifying medical expert Dr. Alexandre B. Todorov's opinions persuasive. R. 45. Dr. Todorov confirmed Plaintiff's impairments of PTSD, major depressive disorder, anxiety disorder with agoraphobia and panic attacks, and attention deficit disorder. R. 93. While Plaintiff suffered mild mental functioning limitations, Dr. Todorov concluded the mental

impairments do not meet or medically equal any listings. The ALJ cited as supportive of Dr. Todorov's opinion two records from the treating nurse practitioners, which include this notation: "last panic attack over one year ago and has been off of the lorazepam[.]" R. 45 (citing R. 406 (Oct. 19, 2017 report); R. 415 (Sept. 1, 2017 report)).

In formulating the RFC, the ALJ also found persuasive Dr. Robert Estock's findings. R. 46. Dr. Estock, the state agency psychiatric consultant, noted Plaintiff suffers moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Among other things, Dr. Estock concluded that Plaintiff could sustain attention and concentration for two-hour periods in order to complete a normal workday at an acceptable pace and schedule. R. 46; 220-223. However, Dr. Estock also concluded that Plaintiff may be "expected to miss 1 or 2 days of work per month due to exacerbation of psychiatric symptoms." R. 223.

The RFC was set forth as follows:

[A]ll levels of work[.] The claimant has no physical limitations, but mentally, socially, and as the same may affect his concentration, persistence and pace, I find that the claimant is limited to simple, unskilled, repetitive and routine work, to be performed in a low social work environment, one which has casual and occasional interaction with coworkers, supervisors, and members of the general public, to be done in jobs where he can work primarily alone and in jobs that require independent judgement, with only occasional routine changes, and in jobs with no multiple nor rapid changes.

R. 41. Based upon the medical findings credited and given Plaintiff's performance of daily activities for himself and his children, the ALJ found that Plaintiff had sufficient

functionality to perform work activity—past work and other jobs—in accordance with the

RFC. R. 45-46. Accordingly, the ALJ found him not disabled. R. 48-49.

## V.   DISCUSSION

### A.  The Applicable Regulations

The relatively new regulations applicable to claims like this filed after March 2017

provide that:

> [T]he ALJ focuses on the persuasiveness of the medical opinion(s) or prior
> administrative medical finding(s) using the following five factors: (1)
> supportability, (2) consistency, (3) relationship with the claimant (which
> includes length of the treatment relationship, frequency of examinations,
> purpose of the treatment relationship, extent of the treatment relationship,
> examining relationship), (4) specialization, (5) other factors. *See* 20 C.F.R. §
> 404.1520(c)(a)-(c) (2020). [In particular, a]n ALJ must explain how he
> considered the factors of supportability and consistency. [*See* 20 C.F.R. §§
> 404.1520c(b)(2), 416.920c(b)(2).] The ALJ must explain in his decision how
> persuasive he finds a medical opinion and/or a prior administrative medical
> finding based on these two factors. *Id*. The ALJ may but is not required to
> explain how he considered the other remaining factors. 20 C.F.R. §
> 404.1520c(b)(3) (2020).

*Nix v. Saul*, No. 4:20-CV-790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021).

The ALJ's analysis should determine "whether the medical source's opinion is (1)

supported by the source's own records and (2) consistent with the other evidence of

record." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *6

(M.D. Fla. Sept. 20, 2021) (citing *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197-RBD-

DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation

adopted*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)).

In evaluating the supportability and consistency factors, the ALJ need only explain

the consideration of these factors on a medical source-by-medical source basis; the

regulations do not require the ALJ to precisely explain the consideration of each opinion within the same source. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). However, this allowance does not absolve the ALJ from making clear the basis for the determination. *See Gogel*, 2021 WL 4261218, at *9 ("The ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion.[] Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review."). To ascertain whether substantial evidence supports a determination, for example, the Court should be able to discern the connection between the sources' opinions and assessments and the ALJ's determination.

### B.  The RFC is Not Supported by Substantial Evidence

Plaintiff raises several issues for review, including that the RFC and the ALJ's determination based upon it is not supported by substantial evidence. The RFC is a determination the ALJ makes based on "all the relevant medical and other evidence" in the record, including both medical and nonmedical. 20 C.F.R. § 416.945(a)(1), 416.945(a)(3). It is "used to determine [one's] capability of performing various designated levels of work[.]" *Pupo v. Comm'r of Soc. Sec.*, 17 F.4th 1054, 1064 (11th Cir. 2021) (citing 20 C.F.R. § 416.967).

According to Dr. Estock, and consistent with the ALJ's crafted RFC, Plaintiff can handle simple instructions, but will have greater difficulty with more detailed and complex instructions. R. 46. The ALJ noted in finding Dr. Estock's opinion persuasive that it was

"consistent with the claimant's daily activities, positive responses to prescribed treatment, good mental status examinations, and no evidence of needing mental health counseling and/or psychiatric hospitalizations for the alleged mental impairments." R. 46. Given this RFC, the ALJ found that Plaintiff could return to his assembler and operator past work. Additionally, using this RFC, the VE found other jobs available that Plaintiff could perform.

### 1.  The ALJ's Determination is Silent on Absenteeism

Plaintiff's RFC does not account for Plaintiff missing any days of work. Thus, critical to the Court's review is that portion of Dr. Estock's opinion that found Plaintiff could "be expected to miss 1 or 2 days of work per month due to exacerbation of psychiatric symptoms." The ALJ found Dr. Estock's opinion consistent with Plaintiff's daily activities, while also apparently broadly rejecting Dr. Estock's opinion that Plaintiff may consistently miss one to two days of work per month. This finding—as to missed work—factors in nowhere in the ALJ's determination as far as the Court can discern. *See* R. 41, 46, 223.

The ALJ did discount Plaintiff's claimed severity or intensity of symptoms (R. 44), as did Dr. Estock in arriving at his determination (R. 221), but this general discount does not suggest that the ALJ was also rejecting Dr. Estock's finding that exacerbation of Plaintiff's symptoms may cause absenteeism from work. In fact, Plaintiff's most recent employment was terminated because of his tardiness or absenteeism. The silence on this subject in both the RFC specifically and the determination generally may be because the ALJ found that conclusion unsupported in Dr. Estock's opinion, insignificant to the

determination, or inconsistent with other medical sources; however, the ALJ's decision leaves that entirely unclear.

The Commissioner argues that the ALJ was not required to adopt Dr. Estock's opinion as to projected absenteeism, and Dr. Todorov's opinion, which was also credited as persuasive, did not include that limitation. Doc. 15 at 8, 12. However, Dr. Todorov's opinion, like the ALJ's, is simply silent on the subject. R. 93-96. The Commissioner is correct that, in crediting Dr. Estock's opinion as persuasive, the ALJ need not incorporate every portion of it into the RFC or even describe every portion with particularity in the decision. However, the record must reveal enough about the portions of the medical source information credited as to supportability and consistency for the Court to determine if the RFC is supported by substantial evidence. The Commissioner glosses over this, stating broadly that "the ALJ did not find that the objective medical evidence supported excessive absences." Doc. 15. This is, at best, an assumption.

While this *might* be true, the ALJ's determination does not reveal this, and this is the missing gap in the decision. Did the ALJ disregard absenteeism because, as the Commissioner suggests, the ALJ found objective medical evidence did not support it? While the objective medical evidence appears to support findings that Plaintiff had a stable course of treatment managing many of his symptoms, the record evidence also indicates (i) Plaintiff's sleep was negatively impacted by his impairment(s), and (ii) Plaintiff's panic attacks reoccurred, which the ALJ seems to have overlooked. R. 90, 92, 94-95 (Plaintiff's February 2019 hearing testimony stating he has panic attacks once or twice per month causing him to feel short of breath), 410 (Nurse Barnes's September 1, 2017 record noting

unexpected panic attacks), 406 and 415 (September and October 2017 records noting "last panic attack over one year ago"), 531 (Nurse Dawkins's February 2018 record noting Plaintiff reported he "had a really bad panic attack").

A detailed description of every part of a medical source opinion's supportability and consistency (or lack thereof) is not required, but the ALJ's decision must have some indication or explanation to connect the RFC—no regular absences expected—and the ALJ's broad disregard of the medical opinion—one to two absences expected every month—he has otherwise deemed persuasive. *See Walker v. Saul*, 533 F. Supp. 3d 1055, 1060–61 (M.D. Ala. 2020) (the ALJ found an opinion generally "persuasive," which included that Plaintiff could only "attend and concentrate for two-hour periods," but the ALJ's determination did "not indicate why the ALJ concluded that Plaintiff could persist [instead] for eight hours a day"; holding that, "[b]ecause the opinion fails to indicate the basis for the RFC determination that Plaintiff can concentrate for eight hours per day, the undersigned cannot conclude that substantial evidence supports the ALJ's RFC determination, particularly as it [relates] to Plaintiff's mental function."); *Nix*, 2021 WL 3089309, at *6 ("[T]he ALJ found [the treating physician's] opinion was not persuasive because it was inconsistent with other evidence in the record and not consistent with Plaintiff's limited history of conservative treatment.[] Thus, the court concludes that the ALJ evaluated the medical evidence properly under the new regulations."); 20 C.F.R. § 404.1520c(b)(3)).

Here, the Court cannot determine that the ALJ properly determined, or determined at all, that he should completely reject the medical source opinion that Plaintiff's symptoms

could be exacerbated so that he could be expected to miss one to two days of work each month as Dr. Estock held. There is no discussion or even passing reference regarding what, if any, support or impact Dr. Estock's absenteeism finding has or could have on Plaintiff's RFC. Indeed, it is unclear if the possibility of absenteeism was given any consideration at all. *See Pupo*, 17 F.4th at 1065 (remanding where, among other things, the ALJ "failed to mention any impact [claimant's] incontinence might have had on her RFC"). The Court, therefore, cannot meaningfully confirm that the RFC and the determination is supported by substantial evidence and must conclude it is not.

### 2.  The Vocational Expert's Testimony Leaves the Absenteeism Issue Open

Additionally, the ALJ's hypothetical questions to the VE leave this gap wide open. "While an ALJ's hypothetical question must take into account all of a claimant's impairments[,] the question need not include impairments that the ALJ has properly determined to be unsupported by the evidence in the record." *Barnum v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 903, 905 (11th Cir. 2014) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

The ALJ's hypothetical questions did not include any allowance for days of work Plaintiff would miss when suffering from exacerbation of symptoms resulting from his mental impairments. The ALJ could have properly determined that the projected exacerbation of symptoms causing absenteeism was unsupported by the record evidence, but it is not apparent from the decision, and nothing in the determination indicates he

reached such a conclusion. The record, thus, does not reflect whether work would be available to Plaintiff if some portion of the absence-determination was credited and included in the hypothetical to the VE. *See Mosher v. Saul*, No. 5:18-CV-109, 2019 WL 3779995, at *6 (N.D. Fla. Aug. 12, 2019) ("The ALJ did not recognize, consider, or resolve this issue [of absenteeism and entry-level jobs in a probationary period] during the VE's testimony or later in her written opinion—and by failing to do so, the ALJ erred.") (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (district courts should not draw factual conclusions on behalf of an ALJ or create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80 (1943)); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995) (to permit an informed review, the ALJ must articulate her analysis of the evidence; "[o]nly then may a reviewing court track the ALJ's reasoning and be assured that the ALJ considered the important evidence")).

Accordingly, the VE's testimony does not constitute substantial evidence and is insufficient to support the ALJ's determination that Plaintiff can perform jobs the VE identified. *See Winschel*, 631 F.3d at 1181 ("Because the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of Winschel's impairments, the vocational expert's testimony is not 'substantial evidence' and cannot support the ALJ's conclusion that Winschel could perform significant numbers of jobs in the national economy."). Perhaps the ALJ determined that this portion of Dr. Estock's opinion was unsupported or inconsistent with other portions of the medical

records that the ALJ did credit or countered by some other objective medical evidence. But, the Court can only guess. Therefore, the Court cannot say that substantial evidence supports the ALJ's decision.

### C. The Appeals Council Committed Legal Error

The absence of any explanation about Dr. Estock's absence opinion is compounded when viewed in light of the additional evidence submitted to the Appeals Council after the ALJ's decision. Plaintiff submitted a November 25, 2019 Mental Impairment Questionnaire to the Appeals Council.[3] R. 24-26. Plaintiff has argued Nurse Dawkins's questionnaire was new evidence that should have been considered by the Appeals Council. According to Plaintiff, this failure of consideration warrants remand. Among other things, Nurse Dawkins opined in her questionnaire that Plaintiff would miss "more than four days per month" due to his mental health impairments and that he could rarely perform at a consistent pace without an unreasonable amount of rest periods. R. 25. The Appeals Council did not exhibit this additional evidence. R. 2. The Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision" and cursorily stated that "this evidence does not show a reasonable probability that it would change the outcome of the decision." R. 1-2.

"Generally, claimants are permitted to present new evidence at each stage of their administrative process, including before the Appeals Council." *Pupo*, 17 F.4th at 1063 (citation omitted). Evidence that is "new, material, and relates to the period on or before

---

[3] Plaintiff submitted other additional evidence to the Appeals Council, but his argument is based upon Nurse Dawkins's Questionnaire. *See* R. 2.

the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision" will be reviewed. *Id.* (citing 20 C.F.R. § 416.1470(a)(5)). Evidence can be chronologically relevant even if it is made after the ALJ's decision. *See Smith v. Colvin*, No. 2:15-CV-216-RDP, 2016 WL 3362011, at *6 (N.D. Ala. June 17, 2016).

The parties focus their dispute on whether the evidence has chronological relevance and whether it has any likelihood to impact the ALJ's decision. Chronological relevance can be established where, as here, a medical source has provided longtime treatment to a plaintiff, even if the records at issue do not come into existence until after the ALJ's decision is rendered. For example, in *Smith v. Colvin*, the Northern District of Alabama held:

> [M]edical statements by Plaintiff's treating physicians are chronologically relevant even though they were made after the ALJ's decision. This is the case because these statements were made by Plaintiff's treating physicians, who understood her symptoms from their early formation through her alleged disability onset date. Even though the medical statements submitted by Plaintiff's treating physicians never explicitly state that their opinions relate back to after the onset date, "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant."

2016 WL 3362011, at *6 (citing *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1322 (11th Cir. 2015)).

Similarly, Nurse Dawkins treated Plaintiff in 2017, 2018, 2019, and 2020, both before and after the ALJ's determination. R. 14-19, 24-26, 131-160, 402-405, 531-532. The mental impairment questionnaire specifically notes that the questions she is answering are "concerning [the] patient's impairments dating back to July 7, 2016"—the alleged onset

14

date, and, therefore, relating to the period before the ALJ's August 22, 2019 decision. R. 24. The Dothan Behavioral Medicine Clinic, where Nurse Dawkins treated Plaintiff, initially began seeing Plaintiff in September 2017; thus, she had access to his initial medical treatment there. The period of time over which she treated Plaintiff provides her meaningful insight into the severity of his mental health impairments and projected exacerbation of symptoms. Therefore, the questionnaire is chronologically relevant.

As to whether there is a reasonable probability this evidence, if considered, would change the outcome of the decision, the Court finds in the affirmative. This is particularly true when the evidence is considered with Dr. Estock's finding as to Plaintiff's anticipated absence from work due to symptom exacerbation. Nurse Dawkins's more restrictive findings considered in this context indicate a reasonable probability the outcome would be different had the ALJ considered exacerbation of symptoms causing regular absence from work and how that might factor into his ability to perform as prescribed in the RFC. If Nurse Dawkins's November 25, 2019 Mental Impairment Questionnaire is considered, the record evidence appears consistent in indicating that Plaintiff could be expected to miss at least two days of work every month, as this is the point at which Dr. Estock and Ms. Dawkins's determinations seem to overlap. *Compare* R. 25 (in November 2019, Dawkins concluded that, if Plaintiff were working, his impairments would cause him to miss "more than four days per month") *with* R. 223 (in March 2018, Dr. Estock concluded Plaintiff could be expected to miss one to two days of work each month due to exacerbated mental health symptoms).

Additionally, the ALJ's discount of Plaintiff's panic attacks when viewed with Nurse Dawkins's November 2019 assessment becomes more confounding. In making his determination, the ALJ highlighted a purported discrepancy between Plaintiff's hearing testimony and Nurse Precious Barnes's records, citing that Plaintiff testified he has one to two panic attacks each month (R. 95), but Nurse Barnes recorded that Plaintiff had not had a panic attack in over a year without medication (R. 408, 415). R. 45. Plaintiff's February 14, 2019 hearing testimony, however, was nearly two years after Nurse Barnes's September 2017 records about the status of Plaintiff's panic attacks *at that time*— September 2016 to September 2017. Moreover, Nurse Dawkins noted in Plaintiff's February 2018 medical record his report of a "really bad panic attack" while on an outing with his children. R. 531. Nurse Dawkins's November 2019 assessment appears to take into consideration, among other things, the regularity of Plaintiff's panic attacks in finding more severe overall limitations than those Dr. Estock identified. For example, she determined that Plaintiff would rarely be able to complete a normal workday without psychological symptoms causing a disruption. R. 25.

Consideration of this new medical evidence may very well warrant acceptance of Dr. Estock's missing-work opinion or even the more severe limitations Nurse Dawkins identified, and acceptance of either would make it reasonably probable a different RFC, and, thus, a different ultimate administrative outcome, would result. *See Pupo*, slip op 16-17; *see also Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).[4] Therefore, the Appeals

---

[4] Nurse Dawkins's Mental Assessment Questionnaire was not submitted to the ALJ because that evidence did not exist until after his determination. Thus, there was good cause for the submission of the records for

Council erred in failing to consider Plaintiff's new, material, and chronologically relevant evidence. Remand is necessary for consideration of Plaintiff's disability eligibility based on the entire record.[5]

## VI.   CONCLUSION

Based on the foregoing, it is ORDERED that:

(1)    The ALJ's decision is REVERSED and REMANDED with instructions that it be returned to the Commissioner for additional proceedings consistent with this opinion.

(2)    A final judgment will be entered separately.

DONE this 11th day of February, 2022.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE

---

the first time to the Appeals Council. *See Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Hyde*, 823 F.2d at 459; *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986).

[5] Because remand is required, the Court pretermits review of the other issues Plaintiff raised.